The opinion of the court was delivered by
Manning, C. J.
The plaintiff sues upon two notes for $1772.32 each, dated September 30,1874 and payable respectively Dec. 1, 1875 and 1876 with interest from Aug. 1,1874, signed by the defendants in solido, and secured by a mortgage on two-thirds of the Magenta plantation. The defence is, error in the execution of the notes and mortgage ; fraud of the plaintiff; want and failure of consideration.
In 1859, J. D. McEnery, the father of the defendants, in his capacity of tutor to them and their sister, acquired an undivided half of the Magenta place. Mrs. Mason, their maternal grandmother, owned the other half, encumbered by a mortgage to secure the payment of one of *696 the purchase notes. Hanneman held this note, and foreclosed the mortgage, and bought that undivided half of the place through his agent Pritchard, who stipulated with McEnery to convey to him, when he should pay the amount of the Hanneman debt.. McEnery had gone into bankruptcy, but before doing so had had recorded a statement of his indebtedness to his minor children, whose mother was dead, prior to January 1870. There were mortgages on Mrs. Mason’s part of the plantation that were primed by Hanneman’s, amounting to $30,000, so that the arrangement was advantageous in reliéving the property from them.
McEnery paid a part of this Hanneman debt, but was unable to complete it, and without completing it, he could not obtain a transfer of the title to himself of that part of Magenta, owned by Hanneman. At this juncture he applied to Fairchild, the plaintiff, to assist him by a loan of the necessary sum for the full payment of the Hanneman debt. The application was made to the plaintiff, not because he was a man of means, which he was not, but because of the long and intimate personal friendship between him and McEnery, and he responded to this call of his life-long friend by putting at his disposal all the money he had, and that not being enough, by borrowing the residue. McEnery executed two notes for the sum thus borrowed from the plaintiff in June 1872, and secured them by special mortgage on the property which he had thus been enabled to acquire from Hanneman. In 1873 he paid a small portion of one of these notes, and shortly afterwards died.
He had contracted a second marriage, and there was one child of that marriage. His widow became the administratrix of her husband’s succession, and his sons now of age, the defendants, were her sureties, and managed the plantation. Knowledge of the manner in, and the means by, which their father had been enabled to secure the ownership of the Mason-Hanneman half of Magenta was imparted to the two brothers, and they agreed for themselves and their sister to assume the payment of the plaintiff’s debt. At that time the agreement was verbal only, but it was subsequently put in writing viz in July 1874, and after an interval a formal sale was made of the succession property of J. D. McEnery, under order of court, under which the defendants and their sister bought the Magenta place. After the title to this place was thus perfected, and the agreement touching the assumpsit of the Fairchild debt was to be carried out, their sister, who had meanwhile married, and who was expected to bear her portion of that debt, refused to assume anything. The two brothers then assumed the whole.
In September 1874 they executed three notes to Fairchild for his debt, the first of which was for $1500 payable the ensuing December. The notes now in suit are the other two, and were secured by mortgage *697 •on their two thirds of Magenta. They made a payment on the first note in January 1875, and that note is now owned by another person. This suit was filed in November 18Í7.
The answer is that they owe nothing — that they and their sister were the creditors of their father for. a sum far exceeding the value of his estate, by reason of his tutorship, and their mortgage had been •preserved by his act in having it recorded — that this mortgage primed Fairchild’s, and was entitled to be satisfied to the exclusion of Fair-child’s, but they were ignorant of this, or rather they were told by the lawyers of their father’s succession that it was not so, and that Fair-child could make his debt — that they looked to these lawyers, who were Messrs. R. W. & R. Richardson, for guidance, and implicitly relied upon their counsel — that R. J. Oaldwell, another lawyer and .their maternal uncle, was the instrument used by the Richardsons to obtain from them the written agreement of July 1874, which led to the execution of the notes and mortgage — and that the whole was done under error as to their true position and rights, occasioned by the wilfully erroneous information given them by the Messrs. Richardson, whom they charge as being the lawyers of Fairchild, and who were acting in his interest— that their act was produced by the fraud thus practiced upon them, and no consideration existed for the notes.
There is nothing to connect the plaintiff with this scheme for the spoliation of these defendants, except that his lawyers are charged with grave professional malfeasance. The record has naturally attracted our special scrutiny, and we are constrained to say, and are justified in saying, that these imputations are made wantonly, and to all appearance under the sting of self-accusation for having yielded to the gratification of a moral sense at the expense of pecuniary loss. The Messrs. Richardson testify that they distinctly and explicitly informed the defendants— one of whom is said to be a lawyer — of their legal rights, that the plaintiff’s mortgage was inferior in rank to their own, and that they could exclude it by enforcing their own. R. W. Richardson repeats many times that he had nothing to do whatever with the Fairchild debt or compromise, and R. Richardson is explicit that he informed B. T. MeEnery particularly, and he thinks the other brother also, of the legal status of that debt. The defendants were already apprised of the nature of their father’s debt to Fairchild. They knew the fact that Fairchild’s money paid the vendor of one half of Magenta. If the titles had shewn the real facts, it would have appeared that Fairchild had satisfied the vendor’s lien and ought to have been subrogated to his right. But these friends were thinking more of securing a great benefit to one of them, than observing the formalities necessary to ensure such a security as would prevent harm to the other. What more natural, what more hon *698 orable, wliat more praiseworthy than that the two sons should redeem-the promise of their dead father, and by this recognition of the sanctity of his obligation perpetuate his justly honoured name and reputation, and raise up to him, by this deed of honest restitution, a monument as durable as that of which the Roman poet sang.
At the time this promise was made, the Fairchild debt was inconsiderable, compared with the value of the property. The hopes of large-returns from investments in planting had not then been extinguished, and in assuming that debt at that time, the defendants were justified in the expectation that the profits of cultivating the plantation would' enable them to meet the notes in due time. If the event had crowned-their hopes, is it probable that the plaintift would ever have been driven-to this action to enforce his rights?
The experience of every practising lawyer in these 1'ate years, when engagements, made while hope was filling every breast, had to be fulfilled under circumstances that were beginning to inspire despair, will furnish a counterpart to this case. Heirs of successions, who willingly promised everything that might be demanded, and who goaded their lawyers by their importunities to conclude advantageous arrangements for them, seek to repudiate their engagements, and make their lawyer the scapegoat, upon whose head are laid all'their sins, and whose destruction will expiate their own wrongs.
The judgment of the lower court was in favor of the plaintiff for the amount claimed in his petition, with recognition of his mortgage.
That judgment is correct and is affirmed.